UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| FELICIA A. HARPER, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:13-cv-1014 |
| ) | |
| v. ) | Honorable Robert Holmes Bell |
| ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Defendant. ) | |
| _____) | |

This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits (DIB) and supplemental security income (SSI) benefits. On August 26, 2010, plaintiff filed her applications for DIB and SSI benefits. She initially alleged a June 1, 2009, onset of disability. (Page ID 201-06). She later amended her claims to allege a June 1, 2006, onset of disability.[1] (Page ID 51, 70-71). Plaintiff's disability insured status expired on December 31, 2010. Thus, it was plaintiff's burden on her DIB claim to submit evidence demonstrating that she was disabled on or before December 31, 2010. *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

---

[1] SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed. Thus, September 2010 is plaintiff's earliest possible entitlement to SSI benefits.

Plaintiff's claims were denied on initial review. (Page ID 139-57). On March 21, 2012, she received a hearing before an administrative law judge (ALJ). (Page ID 67-112). On May 23, 2012, the ALJ issued her decision finding that plaintiff was not disabled. (Op., Page ID 51-62). On June 12, 2013, the Appeals Council denied review (Page ID 39-41), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a complaint seeking judicial review of the Commissioner's decision denying her claims for DIB and SSI benefits.[2] She asks the court to overturn the Commissioner's decision on the following grounds:

1. "The ALJ made an erroneous Step 5 determination and failed to make an accurate Residual Functional Capacity (RFC) finding."

2. "The ALJ failed to properly weigh the reports and opinions of Plaintiff's treating doctors."

(Plf. Brief at 3, 6, docket # 13, Page ID 628, 631). I recommend that the Commissioner's decision be affirmed.

**Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a

---

[2] On August 20, 2013, the Appeals Council granted plaintiff's request for more time to file a civil action. It granted her "60 days" from the date she received the Appeals Council's letter and further assumed that she received the letter "5 days after the date on it." (Page ID 38). Plaintiff filed this lawsuit within the extended period granted by the Appeals Council.

conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013) ("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

**Discussion**

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from June 1, 2006, through December 31, 2010, but not thereafter. (Op. at 3, Page ID 53). Plaintiff had not engaged in substantial gainful activity on or after June 1, 2006. (*Id.*). Plaintiff had the following severe impairments: depression, anxiety, and borderline intellectual functioning. (*Id.*). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (*Id.* at 4, Page ID 54). The ALJ found that plaintiff retained the following residual functional capacity (RFC):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she has no exertional or postural limitations, but must avoid concentrated exposure to unprotected heights and dangerous moving machinery; retains the ability to do rote tasks; can follow simple, verbal instructions; is limited to less than frequent contact with co-workers and the public; and can adapt to less than frequent changes in work expectations or work place environment (SSR 96-8p).

(*Id.* at 5-6, Page ID 55-56). The ALJ found that plaintiff's testimony regarding her subjective functional limitations was not fully credible:

> The claimant testified that she feels unsure of herself She is afraid of failing and embarrassing herself. In a function Report-Adult, she says she spends the day cleaning and watching TV until bedtime. She cares for her sons. She has a hard time sleeping. Sometimes she needs her mom to give medication reminders. She can cook complete meals daily, does household chores and launders for one hour every day. She sometimes needs help or encouragement. She only goes out of doors when she has to, because she does not like being around a lot of people. She states she cannot drive. She goes shopping monthly. She reported she sometimes has hard time writing checks. She has only one friend with whom she talks on the phone. She does not trust people. She has a difficult time understanding written information and has problems with memory, concentration, understanding and getting along with others (Exhibit 4E).
>
> The claimant testified she is depressed because of problems with her oldest son. There is always fighting and aggravation related to her son. She has treated at Muskegon Family Care since 2005. Paxil does not really help due to side effects. She said that Cymbalta and Wellbutrin do work. Due to her aggravation level, she would cry, shut down and it would

> happen all the time, but she forced herself to go to school. She still cries a lot and becomes easily aggravated.
>
> * * *
>
> In a letter from Muskegon Community College by the Coordinator/Counselor for Special Services, Janice Alexander indicates the claimant attends classes and repeats remedial classes. There is no mention of her grade point average (GPA) (Exhibit 12E). The Muskegon Community College transcript from 2008 to 2010, obtained post hearing, show the claimant indeed has repeated some courses, has done well in others, has 27 credits and a GPA of 2.46 (Exhibit 12F). At the hearing, the claimant testified she had very limited reading skills, but she got an A in *Read and Succeed* in college, an A- in *Personalized Writing*, and a C in *Essential Reading Skills* and in *Intro to English Composition*.
>
> A review of the medical and other evidence shows the claimant's severe impairments of depression, anxiety and borderline intellectual functioning are supported by the medical evidence. Although the claimant argues for a diagnosis of mental retardation, it is noted the claimant is the representative payee for her son's Supplemental Security Income, which is inconsistent if she were mildly mentally retarded and needed a payee herself. The claimant has been able to accumulate 27 credit hours at the community college with a cumulative GPA of 2.46. Her subsequent IQ tests were consistent with borderline intellectual functioning. The claimant can and does care for her needs and those of her sons, runs errands for her mother and performs most household chores including laundering clothes and doing outside work such as raking, although she indicates she is slower. She has worked and earned substantial gainful employment level wages in the past. Therefore, after review of the objective medical evidence, while there is documentation that the claimant experiences some difficulties as a result of her severe impairments, her statements concerning the impact of the impairments on her ability to work are not entirely credible in light of the medical history, the degree of medical treatment required, some noncompliance with medication, objective diagnostic findings that do not substantiate the degree of limitations she alleges, reports of the treating and examining practitioners who do not offer limitations that disable her, and the claimant's assertions regarding her inability to work in light of her mildly limiting activities of daily living (SSR 96-7p).
>
> * * *
>
> The objective medical findings, subjective allegations, medical conclusions and opinions, and other relevant evidence support a finding that the claimant is able to perform the work activities as described in the residual functional capacity.

(*Id.* at 6-10, Page ID 56-60). The ALJ found that plaintiff was unable to perform any past relevant work. (*Id.* at Page ID 60). Plaintiff was 41-years-old as the ALJ's decision. Thus, at all times

relevant to her claims, plaintiff was classified as a younger individual. (*Id.* at 11, Page ID 61). Plaintiff has at least a high-school education and is able to communicate in English. (*Id.*). The transferability of job skills was not material to a disability determination. (*Id.*). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were approximately 6,300 jobs in Michigan that the hypothetical person would be capable of performing. (*Id.* at 11, Page ID 61; *see* Page ID 108-10). The ALJ found that this constituted a significant number of jobs and she held that plaintiff was not disabled. (Op. at 11-12, Page ID 61-62).

**1.**

Plaintiff claims that the ALJ committed reversible error because she "failed to properly weigh the report and opinions of Plaintiff's treating doctors." (Plf. Brief at 6, Page ID 631). However, the argument found under this heading in plaintiff's brief and reply brief is that the ALJ should have given greater weight to the opinions provided by her social worker/therapist, Ms. Joan Bouwma. (Plf. Brief at 6-10, Page ID 631-35; Reply Brief at 4-7, Page ID 659-62). Ms. Bouwma is not a doctor. The treating physician rule does not apply to any opinion that Ms. Bouwma expressed. Therapists and social workers are not "acceptable medical sources." *See* 20 C.F.R. §§ 404.1513(a), (d)(1), 416.913(a), (d)(1). There is no "treating therapist" or "treating social worker" rule. The opinions of social worker/therapists are not entitled to any particular weight. Only "acceptable medical sources" can: (1) provide evidence establishing the existence of a medically determinable impairment; (2) provide a medical opinion; and (3) be considered a treating source whose medical opinion could be entitled to controlling weight under the treating physician rule. *See*

*Titles II and XVI: Considering Opinions and Other Evidence from Sources Who are not 'Acceptable Medical Sources' in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies*, SSR 06-3p (reprinted at 2006 WL 2329939, at * 2 (SSA Aug. 9, 2006)); *see also Bliss v. Commissioner*, 406 F. App'x 541, 541 (2d Cir. 2011) ("[T]he assessment by the social worker is ineligible to receive controlling weight because social workers do not qualify as 'acceptable medical sources.'"); *Turner v. Commissioner*, 613 F.3d 1217, 1223-24 (9th Cir. 2010). The opinions of therapists and social workers fall within the category of information provided by "other sources."[3]  *See* 20 C.F.R. §§ 404.1513(d), 416.913(d). The social security regulations require that information from other sources be "considered." 2006 WL 2329939, at * 1, 4  (citing 20 C.F.R. §§ 404.1513, 416.913); *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011); *Cruse v. Commissioner*, 502 F.3d 532, 541 (6th Cir. 2007). This is not a demanding standard. It was easily met here.

        The ALJ's ability to question plaintiff in detail at the hearing regarding the care that she received at Muskegon Family Care (MFC) was limited because plaintiff failed to provide any records from MFC dated after September 10, 2010. This deficiency in the evidence plaintiff presented was noted on the record. (Page ID 71, 111). The ALJ generously agreed to keep the record open for the purpose of allowing plaintiff to file the treatment records from MFC dated after

---

[3] "The Commissioner 'may' use evidence from other sources, but information from these 'other sources' cannot establish the existence of a medically determinable impairment." *Brown v. Commissioner*, No. 14-1626, 2015 WL 163059, at * 2 (6th Cir. Jan. 13, 2015) (quoting SSR 06-03p, 2006 WL 2329939, at * 2 ). The ALJ has "discretion to determine the proper weight to accord opinions from other sources." *Engebrecht v. Commissioner*, 572 F. App'x 392, 398 (6th Cir. 2014). The opinions of "other sources" are not entitled to controlling weight and there is no requirement that the ALJ provide "good reasons" for rejecting such opinions. *See Smith v. Commissioner*, 482 F.3d 873, 876 (6th Cir. 2007); *see also Engebrecht v. Commissioner*, 572 F. App'x at 398; *Borden v. Commissioner*, No. 1:13 cv 2211, 2014 WL 7335176, at * 9 (N.D. Ohio Dec. 19, 2014); *Hibbard v. Commissioner*, 1:12-cv-1216, 2014 WL 1276518, at * 6 (W.D. Mich. Mar. 27, 2014).

September 2010. (*Id.*). Plaintiff did not provide any testimony regarding Ms. Bouwma, nor any therapy that she may have provided. MFC records indicate that plaintiff's social worker/therapists were Stephanie Weesie and Joan Bouwma. (*See e.g.*, Page ID 393, 393, 401, 470-72, 509, 537). On January 1, 2011, Ms. Bouwma wrote a letter (Page ID 455), and on March 15, 2012, she completed a RFC questionnaire in support of plaintiff's claims for DIB and SSI benefits (Page ID 465-67). The opinions Ms. Bouwma expressed in these documents were not entitled to any particular weight. RFC is an issue reserved to the Commissioner[4] and only acceptable medical sources can provide evidence establishing the existence of a medically determinable impairment. The ALJ considered all the evidence.[5] (Op. at 56, Page ID 56) Although most of the discussion in the ALJ's opinion focused on opinions from acceptable medical sources, she did not ignore the materials generated by the social worker/therapists. (Page ID 54, 56-60).

The ALJ gave more weight to the opinions of examining mental health professionals with greater expertise than MFC's social worker/therapists. The ALJ found that the opinions of Psychologist Allison Bush and Psychologist Dennis Mulder, both acceptable medical sources, were entitled to great weight. (Op. at 8-10, Page ID 58-60). Psychologist Bush conducted her examination in October 2010. (Page ID 447-50). Plaintiff stated that she had no history of hospitalization for any mental impairment. She had participated "on and off" in outpatient therapy in 2009 at MFC. She stated that she had "3-4 sessions during the year and stopped attending because of her college classes." (Page ID 477). Plaintiff graduated from high school in 1990. Some

---

[4]*See* 20 C.F.R. §§ 404.1527(d)(2), (3), 416.927(d)(2), (3).

[5]It is well established that "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Daniels v. Commissioner,* 152 F. App'x 485, 489 (6th Cir. 2005); *see Boseley v. Commissioner*, 397 F. App'x 195, 199 (6th Cir. 2010).

of her classes had been special education classes. (Page ID 447). She stated that she had been "attending Muskegon Community College for the past 3 years." (Page ID 477). Her college expenses were paid by grants and financial aid. (Page ID 448). She had two boys, ages 20 and 14. (Page ID 447). Among other things, plaintiff was supporting herself on her oldest son's SSI payments. Plaintiff and her son had frequent arguments related to this money.[6] Plaintiff's younger son did not present a confrontation problem and was "doing ok in school." (Page ID 448). Plaintiff reported that she was depressed and anxious. Her biggest stress was trying to get her oldest son to "get on the right track and convince him to get his GED." (Page ID 449). Although plaintiff claimed anxiety, Psychologist Bush found no observable signs of it. "There was no fidgeting motor movements [and] no description of difficulty breathing with a racing heart rate." (Page ID 449). Based on this examination, Psychologist Bush offered a diagnosis of anxiety disorder, NOS, depressive disorder, NOS, and possible borderline intellectual functioning. (Page ID 449). Plaintiff was able to understand, retain and follow simple instructions. She was capable of performing simple, routine tasks within a structured environment. (Page ID 449-50).

On April 9, 2012, Psychologist Mulder conducted his examination. (Page ID 603-611). He noted that plaintiff had "never been hospitalized psychiatrically." (Page ID 603). Mulder found that plaintiff's speech was clear, coherent, and fluent. Her thought processes were relevant,

---

[6] Plaintiff was her son's representative payee. (Page ID 91, 402, 509, 548). The ALJ found that this status was one of the facts undercutting plaintiff's attempts to characterize herself as being mentally retarded: "Although claimant argues for a diagnosis of mental retardation, it is noted the claimant is the representative payee for her son's Supplemental Security Income, which is inconsistent if she were mildly mentally retarded and needed a payee herself. The claimant has been able to accumulate 27 credit hours at the community college with a cumulative GPA of 2.46. Her subsequent IQ tests were consistent with borderline intellectual functioning." (Op. at 9, Page ID 59).

logical, connected, and somewhat concrete." (Page ID 605). Plaintiff reported that her depression had improved with medication. She was fully oriented to time, person, and place. (Page ID 605). Psychologist Mulder "administered the Wechsler Adult Intelligence Scale-IV, which reflected a Verbal Comprehension Index of 76; Perceptual Reasoning Index of 73; a Working Memory Index of 74, and a Processing Speed Index of 81; and a Full scale of 71, which is in the borderline level of intellectual functioning and at the 3rd percentile. The diagnosis by Dr. Mulder included dysthymia, anxiety disorder and a full scale IQ of 71 with borderline intellectual functioning[.]" (Op. at 9, Page ID 59). The ALJ's decision to give less weight to the opinions of plaintiff's social worker/therapists than the opinions of licensed psychologists was consistent with applicable regulations and is supported by more than substantial evidence.

**2.**

Plaintiff argues that the ALJ committed reversible error by making an "erroneous Step 5 determination and failed to make an accurate Residual Functional Capacity Finding." (Plf. Brief at 3, Page ID 628). This Argument is founded on plaintiff's disagreement with the ALJ's factual finding regarding her credibility. (Plf. Brief at 4-5, Page ID 629-30; Reply Brief at 1-4, Page ID 657-59). Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528. The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the "substantial

evidence" standard.  This is a "highly deferential standard of review."  *Ulman v. Commissioner*, 693 F.3d 709, 714 (6th Cir. 2012).  "Claimants challenging the ALJ's credibility determination face an uphill battle."  *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005); *see Ritchie v. Commissioner*, 540 F. App'x 508, 511 (6th Cir. 2013) ("We have held that an administrative law judge's credibility findings are 'virtually unchallengeable.'").  "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying."  *Jones*, 336 F.3d at 476.  "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints."  *Buxton v. Halter*, 246 F.3d at 773; *accord White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).

The Sixth Circuit recognizes that meaningful appellate review requires more than a blanket assertion by an ALJ that "the claimant is not believable."  *Rogers v. Commissioner*, 486 F.3d 234, 248 (6th Cir. 2007).  The *Rogers* court observed that Social Security Ruling 96-7p requires that the ALJ explain her credibility determination and that the explanation "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  *Rogers*, 486 F.3d at 248.  The ALJ gave a lengthy explanation of her factual finding regarding plaintiff's credibility.  (Page ID 56-60). It was appropriate for the ALJ to take plaintiff's daily activities into account in making her credibility determination.  *See Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007); *Blacha v. Secretary of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990).  Plaintiff's ability to

attend college classes, provide care for her sons and her mother, act as the representative payee for her older son's SSI benefits, and perform household chores such as vacuuming, sweeping, cooking, washing dishes, and laundering clothes undercut the credibility of her claims of more significant functional limitations. I find that the ALJ gave a more than adequate explanation of her factual finding regarding plaintiff's credibility and that her finding is supported by more than substantial evidence.

RFC is the most, not the least, a claimant can do despite her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Griffeth v. Commissioner*, 217 F. App'x 425, 429 (6th Cir. 2007). The ALJ's findings regarding plaintiff's RFC are supported by substantial evidence.

A hypothetical question is not required to list the claimant's medical conditions, but is only required to reflect the claimant's limitations. *Webb v. Commissioner*, 368 F.3d 629, 633 (6th Cir. 2004). The ALJ found that plaintiff's testimony was not fully credible. It is well settled that a hypothetical question to a VE need not include unsubstantiated complaints. *See Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *see also Parks v. Social Security Admin.*, 413 F. App'x 856, 865 (6th Cir. 2011) ("Hypothetical questions [ ] need only incorporate those limitations which the ALJ has accepted as credible."); *Carrelli v. Commissioner*, 390 F. App'x 429, 438 (6th Cir. 2010) ("[I]t is 'well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.' ") (quoting *Casey*, 987 F.2d at 1235). The ALJ's hypothetical question included all the limitations she found to be credible.

## **Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated: January 26, 2015 /s/ Phillip J. Green
United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).